Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 491 | DATE | 6/16/2004 |
| CASE TITLE | Wallace, et al. vs. The Chicago Housing Authority, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion for reconsideration [31-1] is granted in part and denied in part. For the purposes of Counts V, VI, VIII, IX, and X, the court finds that any acts that occurred after October 1, 1999 that comprise part of an alleged pattern or practice of FHA violations are actionable.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 17 2004 | |
| | Notified counsel by telephone. | | date docketed | 36 |
| ✓ | Docketing to mail notices. | | 15 | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| RO | courtroom deputy's initials | 2004 JUN 16 AM 3:35 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DIANE LINK WALLACE,<br>ANGELA MAPLES, LISA TAYLOR,<br>MARY E. SISTRUNK,<br>PANDORA MEADORS, ANNIE R. SMITH,<br>and NICHELLE HART, on behalf of<br>themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CHICAGO HOUSING AUTHORITY,<br>an Illinois Municipal Corporation, and<br>TERRY PETERSON, in his official capacity<br>as Chief Executive officer of the CHA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **DOCKETED**<br>**JUN 1 7 2004**<br><br>No. 03 C 0491<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

This opinion addresses Plaintiffs Diane Link Wallace, Angela Maples, Lisa Taylor, Mary E. Sistrunk, Pandora Meadors, Annie R. Smith, and Nichelle Hart's ("Plaintiffs") Motion to Reconsider Section I of this Court's December 23, 2003 Memorandum Opinion and Order. (R. 31-1.) Plaintiffs ask the Court to reconsider only the portion of our decision that limits Plaintiffs' Fair Housing Act ("FHA") claims to any acts that occurred within the FHA's two-year statute of limitations.[1] (R. 27, Dec. 23, 2003 Order at 7.) Specifically, Plaintiffs challenge our holding that "any acts occurring more than two years before the filing of the initial complaint on January 23, 2003 are time-barred." (*Id.*) Plaintiffs argue that we should reconsider our prior order because: (1) their FHA claims rest on Defendant Chicago Housing Authority's ("CHA") on-going

---

[1] Thus, Plaintiffs' motion to reconsider is limited to Counts V, VI, VIII, IX, and X of Plaintiffs' First Amended Complaint. (R. 14.)

practices, which under a continuing-violations theory, would allow acts occurring before the FHA's two-year statute of limitations to survive; and (2) CHA's practices were not interrupted by the Relocation Rights Contract. For the reasons set forth below, we agree with Plaintiffs' first argument but disagree with the second; we therefore grant Plaintiffs' motion to reconsider in part and deny it in part. (R. 31-1.)

## ANALYSIS

Whether to grant a motion to reconsider is a matter squarely within the Court's discretion. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Typically, the Court will not reconsider a prior order unless the movant presents newly discovered evidence, establishes a manifest error of law or fact, or demonstrates that the Court has "patently misunderstood" its position. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). In our prior order, however, we indicated that we might revisit our decision regarding the statute of limitations if Plaintiffs could establish that they intended to proceed under a pattern-or-practice theory and that proceeding under that theory would alter our application of the statute of limitations to Plaintiffs' claims. (R. 27, Dec. 23, 2003 Order at 7 n.1.) In their motion to reconsider, Plaintiffs argue that they can properly bring a pattern-or-practice theory as private litigants, and they assert that proceeding under that theory brings acts that occurred prior to 2001 into the statute of limitations period under a continuing-violations theory. Therefore, we will address Plaintiffs' motion to reconsider those issues in full.

2

## I. Private Parties May Bring A Pattern-or-Practice Claim Under The FHA

The text of the FHA gives private litigants the right to enforce the FHA in court: "*[a]n aggrieved person* may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . ." 42 U.S.C. § 3613(a)(1)(A) (emphasis added). The FHA also allows the Attorney General to commence a civil action where "any person or group or persons is engaged in a pattern or practice" of violating the rights granted under the FHA. 42 U.S.C. § 3614(a). This section's specific reference to the Attorney General's authority to prosecute pattern-or-practice claims does not contradict nor diminish the ability of "any aggrieved person" to bring such claims under § 3613(a)(1)(A). The Supreme Court has held that similar language in an earlier version of the FHA merely "serves to describe the suits that the Attorney General may bring, and not to limit suits that private parties may bring[.]"[2] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 n.23 (1982). Thus, a private litigant may properly bring a pattern-or-practice claim under the FHA. *Id.*

## II. Plaintiffs' Pattern-or-Practice Theory

In their motion to reconsider, Plaintiffs assert that their disparate impact, perpetuation of segregation, and racial steering claims are all necessarily grounded in a theory that CHA had a pattern or practice of violating the FHA. (R. 31-1, Mot. to Reconsider at 3.) Plaintiffs clarify that unlike their § 1983 claims, which stem solely from CHA's alleged on-going failure to

---

[2]Congress amended the FHA in 1988 in part to increase the ability of private litigants to enforce the prohibition of housing practices that discriminate on the basis of race, color, national origin, and religion. H.R. Rep. No. 100-711, at 13 (1988), *reprinted in* 1988 U.S.C.A.A.N. 2173, 2174. To effectuate that purpose, Congress extended the statute of limitations from 180 days to two years after the occurrence or termination of an alleged discriminatory housing practice. *Id.* at 39.

provide adequate relocation services, their claims under the FHA also arise from CHA's alleged practices of racial steering and wrongfully displacing Plaintiffs from their homes. (*Id.* at 2-3.) Plaintiffs argue that this distinction impacts our prior holding regarding the application of the statute of limitations to their claims because the Supreme Court's decision in *Havens*, rather than *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), applies to their FHA claims. (*Id.* at 1-2.)

### A. Both *Havens* and *Morgan* Inform Our Analysis of Plaintiffs' Pattern-or-Practice Claims Under The FHA

Upon reconsideration, we find that both *Havens* and *Morgan* inform our analysis of whether acts that occurred prior to the two-year limitations period are actionable as part of an alleged pattern or practice of conduct in violation of the FHA. In *Morgan*, the Supreme Court considered whether a plaintiff suing under Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e, may bring claims based on events that fall outside of that statute's limitations period. 536 U.S. at 104-05. The Court focused on the text of Title VII, which states that a suit must be filed "within one hundred and eighty days *after the alleged unlawful employment practice occurred.*" *Id.* at 109 (emphasis in original) (quoting 42 U.S.C. § 2000e-5(e)(1)). Based on that language, the Court held that Title VII precludes claims for discrete acts of discrimination that occur outside of the limitations period, and that, for purposes of a hostile work environment claim, acts that occur prior to the limitations period are actionable as long as an act constituting part of the hostile work environment occurs within the limitations period. *Id.* at 113-14, 116-18. The Court made this distinction between hostile work environment claims and discrete discriminatory acts because it found that the "very nature [of hostile work

4

environment claims] involves repeated conduct." *Id.* at 115. In other words, because a hostile work environment claim necessarily involves "a series of separate acts that collectively constitute one" unlawful practice, the court may consider the entire time period of that practice as long as an act contributing to the claim occurred within the limitations period. *Id.* at 117.

In *Havens*, the Supreme Court specifically addressed the FHA's statute of limitations. There, the Supreme Court held that a pattern-or-practice theory may revive otherwise stale acts if these acts are part of a "continuing violation" of the FHA. 455 U.S. at 380-81. Under the continuing-violations theory, the Court held that claims challenging "an unlawful practice" under the FHA are timely as long as the "last asserted occurrence of that practice" falls within the limitations period. *Id.* at 380-81. Thus, an allegation of a continuing violation under the FHA is treated differently than an allegation of a discrete act of discrimination for statute-of-limitations purposes. *Id.*

The FHA's statute of limitations was amended in 1988, and now states—consistent with the *Havens* holding—that an aggrieved party's claims are timely if they are filed "not later than 2 years after the occurrence *or the termination* of an alleged discriminatory housing practice[.]" 42 U.S.C. § 3613(a) (emphasis added). Congress, by adding language to clarify that a party may bring a claim within two years after the end of an allegedly on-going discriminatory housing practice, clarified its intent to allow parties to recover for earlier acts under the FHA that constitute part of an on-going pattern or practice. *See* H.R. Rep. No. 100-711, at 33, *reprinted in* 1988 U.S.C.A.A.N. 2173, 2194.

The amended text of the FHA coupled with the Supreme Court's holding in *Havens* demonstrates that where a plaintiff properly alleges a pattern of conduct that violates the FHA,

5

acts that occur prior to the limitations period are actionable as long as they are part of the alleged pattern. The *Morgan* decision does not contradict this finding; rather, it recognizes that prior acts may be timely under the continuing-violations theory where the asserted claim necessarily arises from a pattern of unlawful conduct. 536 U.S. at 117. Thus, we now turn to whether Plaintiffs have properly alleged that CHA engaged in a pattern or practice of violating the FHA.

### B. Plaintiffs' A Pattern-Or-Practice Allegations

A pattern-or-practice claim "necessarily involves a number of discriminatory acts, not a particular one from which the time for bringing suit may be measured." *United States v. City of Parma, Ohio*, 661 F.2d 562, 573 (6th Cir. 1981). Thus, "[i]n a suit claiming that the defendant engaged in a continuous course of conduct that causes damages . . . a plaintiff can recover for damages that preceded the limitations period if they stem from a persistent process of illegal discrimination." *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 265 (7th Cir. 1996). To establish a continuing course of conduct under a pattern-or-practice theory, Plaintiffs must show that the character of CHA's actions "was not apparent when they were committed but became so when viewed in light of the later acts." *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993).

Plaintiffs' motion to reconsider indicates that their disparate impact, perpetuation of segregation, and racial steering claims under the FHA all necessarily spring from a pattern of events that began in 1995 and extended into the limitations period. (R. 31-1, Mot. for Reconsideration at 10.) We will address each of these claim categories in more detail below.

### 1. Disparate Impact

Counts VIII, IX, and X of Plaintiffs' First Amended Complaint allege that CHA's practices of failing to maintain public housing facilities and its "closure, demolition, and relocation policies" had a disparate impact on African Americans, female-headed households, and families with children. (R. 14, First Am. Compl. ¶¶ 262-73.) Plaintiffs allege that acts prior to 2001 should be included in their disparate impact claims under a continuing-violations theory because these claims were discoverable only after they learned that CHA had a pattern or practice of dislocating other similarly-situated inhabitants of public housing. (R. 31-1, Mot. for Reconsideration at 10-11; R. 34, Reply at 3-5.)

Plaintiffs can establish a prima facie disparate impact case under the FHA simply by showing that Defendants' actions had discriminatory effects upon a protected class. *Metro. Housing Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1289-90 (7th Cir. 1977); *Snyder v. Barry Realty, Inc.*, 953 F. Supp. 217, 219 (N.D. Ill. 1996). The question in any disparate impact claim under the FHA is "whether a policy, procedure, or practice specifically identified by the plaintiff has a significantly greater discriminatory impact on members of a protected class." *Simms v. First Gibralter Bank*, 83 F.3d 1546, 1555 (5th Cir. 1996). Acts that occurred before the limitations period may be brought into a timely disparate impact claim where at least one violation included in the pattern of discriminatory conduct occurred during the limitations period. *See Vill. of Bellwood v. Dwivedi*, 895 F.2d 1521, 1528 (7th Cir. 1990).

As we noted in our earlier opinion, Plaintiffs' disparate impact claim cannot rest on a series of discrete occurrences. *See Morgan*, 536 U.S. at 115. However, Plaintiffs have clarified that they intend to proceed on their FHA claims under a pattern-or-practice theory. After

7

reviewing the First Amended Complaint with this in mind, we believe at this stage that Plaintiffs have adequately alleged that their disparate impact claims are founded on a continued pattern or practice that extends into the limitations period.³ Therefore, we find that Plaintiffs' claims that CHA's practices disparately impacted Plaintiffs in violation of the FHA properly includes acts that occurred prior to January 23, 2001.⁴ *See, e.g., Havens*, 455 U.S. at 381.

### 2. Perpetuation of Segregation

Count V of the First Amended Complaint alleges that the Defendants' practices "have and will continue to have the effect of segregating Plaintiffs, and of perpetuating residential housing segregation in the City of Chicago" in violation of the FHA. (R. 14, First Am. Compl. ¶ 253.) Plaintiffs argue that Defendants' practices, which by their very nature cannot be discerned from a single plaintiff's experience, similarly support their perpetuation of segregation claims. (R. 31-1, Mot. for Reconsideration at 11-12.)

Conduct that "perpetuates segregation and thereby prevents interracial association . . . will be considered invidious under the Fair Housing Act independently of the extent to which it produces a disparate effect on different racial groups." *Arlington Heights*, 558 F.2d at 1290. Although perpetuation of segregation claims can occasionally rest on a single incident, we agree

---

³The Court still has concerns that the alleged pattern or practice of misconduct may be characterized more accurately as a series of discrete happenings. However, because at the motion to dismiss stage we must accept all well-plead allegations as true, we are obligated to give the Plaintiffs the benefit of the doubt here. *See Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). We will carefully scrutinize this issue again after an appropriate factual record has been developed.

⁴This finding, as well as the Court's findings regarding Plaintiffs' perpetuation of segregation and racial steering claims, are subject to our holding regarding the Relocation Rights Contract as discussed in Section III of this opinion.

with Plaintiffs that their complaint alleges a pattern of discriminatory conduct sufficient to support acts occurring prior to the FHA's two-year statute of limitations. Therefore, we now hold that Plaintiffs are not limited by the statute of limitations and accordingly may bring under Count V acts that occurred prior to January 23, 2001.

### 3. Racial Steering

Count VI alleges that Defendants violated the FHA by "intentionally steer[ing] Plaintiffs to predominately African-American neighborhoods." (R. 14, First Am. Compl. ¶ 255.) As with disparate impact and perpetuation of segregation claims, racial steering often is discerned only after the defendants have engaged in a pattern of conduct.

As the Supreme Court held in *Havens*, a racial steering claim is timely where an alleged continuing policy and practice of unlawful racial steering extends into the limitations period. *Havens*, 455 U.S. at 381. Here, Plaintiffs have alleged that Defendants engaged in a pattern or practice of conduct that amounts to racial steering. (R. 14, First Am. Compl. ¶¶ 254-56.) These allegations are sufficient to bring pre-2001 acts that are part of the same pattern or practice into the limitations period. *Havens*, 455 U.S. at 381. Thus, we will permit Plaintiffs to bring claims of racial steering for acts occurring prior to January 23, 2001.

## III. The Relocation Rights Contract

Plaintiffs also urge us to reconsider our holding that the October 1999 Relocation Rights Contract interrupted any alleged continuing violations of the FHA or § 1983. We decline to do so. In our prior order we stated that "even were we to accept a continuing violations theory . . . we would hold that it would start running, at the earliest, from October 1, 1999," the effective date of the Relocation Rights Contract. (R. 27, Dec. 23, 2003 Order at 7.) We did not invite

9

further comment regarding the Relocation Rights Contract's impact on the alleged continuing violations. Nor have Plaintiffs brought forth in their motion for reconsideration any evidence of the Court's misapprehension, any newly discovered evidence, or any manifest error of law or fact. *See Bank of Waunakee*, 906 F.2d at 1191. Plaintiffs have demonstrated no reason to amend our prior holding that the Relocation Rights Contract comprises an intervening event that interrupts the alleged patterns or practices. (R. 27, Dec. 23, 2003 Order at 7.) As a result, we deny their motion for reconsideration as it pertains to the interruptive effect of the Relocation Rights Contract and reaffirm that any acts that occurred prior to October 1, 1999 may not be considered as part of CHA's alleged pattern or practice of FHA violations.[5]

## CONCLUSION

For the foregoing reasons, we grant in part and deny in part Plaintiffs' motion for reconsideration. (R. 31-1.) For the purposes of Counts V, VI, VIII, IX, and X, we hold that any acts that occurred after October 1, 1999 that comprise part of an alleged pattern or practice of FHA violations are actionable.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: June 16, 2004

---

[5] Defendants' assertion that none of the named parties have an interest in the extension of the relevant time period back to this date is belied by the text of the Complaint. (*See* R. 33, Response at 3, 7, 8 n.5.) Plaintiffs allege that Ms. Sistrunk was displaced and relocated eleven times over the course of seven years beginning in 1996. (R. 14, First Am. Compl. at ¶ 13.) This indicates that at least some of the acts that are part of the continuum of the alleged pattern or practice occurred between October 1, 1999 and January 23, 2001.