# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 491 | **DATE** | 10/6/2004 |
| **CASE TITLE** | Wallace, et al. vs. The Chicago Housing Authority | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 10/27/2004 at 10:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion for class certification [37-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | OCT 0 7 2004 | |
| ✓ | Docketing to mail notices. | date docketed | |
| | Mail AO 450 form. | | 53 |
| | Copy to judge/magistrate judge. | docketing deputy initials | |
| | | | |
| RO | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

U.S. DISTRICT COURT
CLERK

2004 OCT -6 PM 4:10

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DIANE LINK WALLACE, ANGELA MAPLES, LISA TAYLOR, MARY E. SISTRUNK, PANDORA MEADORS, and ANNIE R. SMITH, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) |  |
| Plaintiffs, | ) ) | No. 03 C 0491 |
| v. | ) ) | Judge Ruben Castillo |
| THE CHICAGO HOUSING AUTHORITY, an Illinois Municipal Corporation, and TERRY PETERSON, in his official capacity as Chief Executive Officer of the Chicago Housing Authority, | ) ) ) ) ) ) | **DOCKETED**<br>OCT 0 7 2004 |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Diane Link Wallace, Angela Maples, Lisa Taylor, Mary E. Sistrunk, Pandora

Meadors, and Annie Smith[1] ("Plaintiffs") have moved to certify the following class:

> All present and former public housing residents who moved or will be moved out of [Chicago Housing Authority ("CHA")] public housing using a Housing Choice Voucher (also known as a Section 8 Certificate or a Section 8 Voucher), and who, on or after October 1, 1999, have been, continue to be, or will be adversely affected by Defendants' and their agents' segregative and discriminatory actions, policies, and practices, as alleged in the Plaintiffs' first amended complaint.

(R. 37-1, Pls.' Mot. at 1.) This proposed general class contains two subclasses: (1) former CHA

residents who were initially relocated after October 1, 1999, the effective date of the Relocation

Rights Contract; and (2) CHA residents who will relocate from public housing but have not yet

---

[1]Former named plaintiff Nichelle Hart has been withdrawn as a class representative. (R. 42, Ex. 2B, 8/18/04 Letter.)

done so. (*Id.*) For the reasons set forth herein, we grant Plaintiffs' motion with modification.

## RELEVANT FACTS[2]

Plaintiffs bring this lawsuit on behalf of a class of current and former CHA residents seeking declaratory and injunctive relief from CHA's alleged policy and practice of displacing CHA tenants from public housing to make way for mixed-income communities. (R. 14, First Am. Compl. ¶¶ 1-6.) Plaintiffs allege that in addition to displacing Plaintiffs from public housing, CHA has a policy and practice of failing to provide adequate relocation services or providing relocation services that effectively or openly steer Plaintiffs into racially and economically segregated neighborhoods. (*Id.* ¶ 3.) Plaintiffs allege that as a result of these illegal policies, the displaced Plaintiffs are now living in neighborhoods "characterized by high poverty, high crime, poor schools and poor municipal services." (*Id.*)

On December 23, 2003, we dismissed counts four, eleven, and twelve of the amended complaint which alleged, respectively, violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, violations of the Uniform Relocation Assistance and Real Property Acquisition Act of 1970, and breach of the Moving to Work Agreement between CHA and the United States Department of Housing and Urban Development. *Wallace*, 298 F. Supp. 2d at 725. We also held that Plaintiffs' Fair Housing Act ("FHA") claims were limited by the FHA's two-year statute of limitations to any acts that occurred after January 23, 2001. *Id.* at 717. We noted that we might reconsider that holding if Plaintiffs could establish that their suit is premised on "pattern-or-practice" claims that could avoid the running of the statute of limitations under a

---

[2]We address here only those facts that pertain to Plaintiffs' motion for class certification. For a more thorough recitation of the facts in this case, *see Wallace v. Chi. Housing Auth.*, 298 F. Supp. 2d 710 (N.D. Ill. 2003).

2

continuing-violations theory. *Id.* at 717 n.1. Our opinion stated, however, that "even were we to accept a continuing violations theory . . . we would hold that it would start running, at the earliest, from October 1, 1999—the date on which CHA became contractually bound and otherwise obligated under federal law to provide relocation services."[3] *Id.* at 717.

On January 21, 2004, Plaintiffs filed a motion to reconsider our statute of limitations holding regarding their FHA claims. (R. 31.) Upon reconsideration, we found that the Complaint adequately alleges that Plaintiffs' disparate impact, racial steering, and perpetuation of segregation claims under the FHA are based on a continued pattern or practice that extends into the statute of limitations period. *Wallace v. Chi. Housing Auth.*, 321 F. Supp. 2d 968, 974-75 (N.D. Ill. 2004). We declined, however, to reconsider our holding that the Relocation Rights Contract is an intervening event that interrupts the alleged pattern or practice of illegal conduct. *Id.* at 975. As a result, we held that any acts that occurred prior to October 1, 1999 could not be considered as part of the alleged pattern or practice of FHA violations. *Id.*

## LEGAL STANDARDS

A party seeking certification of a class must demonstrate that the proposed class meets all of the requirements of Federal Rule of Civil Procedure 23(a): (1) the class is so numerous that joinder of the class members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class as a whole (typicality); and (4) the representatives will fairly and adequately protect the class interests (adequacy). *Williams v. Chartwell Fin.*

---

[3]October 1, 1999 is the effective date of the Relocation Rights Contract. The Relocation Rights Contract establishes the relocation choices and available services for CHA tenants in public housing units scheduled for demolition. *See Wallace*, 298 F. Supp. 2d at 715.

*Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000). Even if the proposed class meets the Rule 23(a) prerequisites, the moving party must demonstrate that the class satisfies at least one of the Rule 23(b) requirements as well. *Id.*; *see also Hispanics United of DuPage Cty. v. Village of Addison, Ill.*, 160 F.R.D. 681, 686 (N.D. Ill. 1995).

The Court has broad discretion to determine whether a proposed class meets the Rule 23 certification requirements. *See Uhl v. Thoroughbred Tech. and Telecomm., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). In making this determination, the Court recognizes that Rule 23(a) should be liberally construed to support its policy of favoring the maintenance of class actions. *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 25-26 (7th Cir. 1975). The Court also retains broad power to modify the definition of a proposed class if it believes that the proposed definition is inadequate. *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 328-29 (N.D. Ill. 1995); *Metro. Area Housing Alliance v. U.S. Dep't of Housing and Urban Dev.*, 69 F.R.D. 633, 638 n.7 (N.D. Ill. 1976).

## ANALYSIS

Plaintiffs assert in their motion that the proposed general class and two proposed sub-classes meet all of the Rule 23(a) requirements and qualify under Rule 23(b)(2), which permits class certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." (R. 37, Pls.' Mot. at 2.) CHA objects to the certification of Plaintiffs' proposed general class and both sub-classes. Before we can determine whether this class meets the Rule 23 criteria, we must consider two thorny threshold issues. First, we must address whether the claims of plaintiffs who relocated

4

from public housing prior to October 1, 1999 are untimely and therefore not subject to certification. Second, we will determine whether a class of potential plaintiffs who initially relocated prior to October 1, 1999 and did not move using a Housing Choice Voucher after October 1, 1999 is sufficiently definite to support certification. Only when these matters are settled will we consider the application of Rule 23 to Plaintiffs' proposed class.

## I.      Timeliness: Tenants Who Initially Moved Prior to October 1, 1999

Whether the pre-October 1, 1999 CHA tenants can be included in the proposed class based on discriminatory acts that occurred after October 1, 1999 is the central point of controversy in the extensive briefing tendered to the Court on the motion for class certification. The controversy stems from the parties' divergent interpretations of our previous holdings regarding the application of the statute of limitations to Plaintiffs' FHA claims. Defendants argue that pursuant to our holdings, all potential plaintiffs who left public housing prior to October 1, 1999 are time-barred. (R. 42, Def.'s Resp. at 9-13.) Plaintiffs argue, on the other hand, that under our previous decisions "Plaintiffs are properly within the class if they were harmed since October 1, 1999 by CHA's pattern or practice of discriminatory relocation services." (R. 44, Pls.' Reply at 3.) Because a proposed class must be limited to plaintiffs with timely claims, *Movement for Opportunity and Equal. v. General Motors Corp.*, 622 F.2d 1235, 1248 (7th Cir. 1980), and because we have broad discretion to interpret our previous orders, *Hastert v. Ill. State Bd. of Election Comm'ers*, 28 F.3d 1430, 1438 (7th Cir. 1993), we will resolve this controversy before turning to the Rule 23 analysis.

In our opinion addressing Plaintiffs' motion to reconsider, we found that Plaintiffs had alleged a pattern-or-practice theory for their racial segregation, perpetuation of segregation, and

5

disparate impact claims under the FHA based on Defendants' conduct from 1995 until the present. *Wallace*, 321 F. Supp. 2d at 973-75. We held, however, that the Relocation Rights Contract constitutes an intervening event that interrupts the pattern or practice of CHA's allegedly illegal conduct. *Id.* at 975. As a result, Plaintiffs' continuing-violation theory can only extend back to the date of that intervening event. *Id.* We held that any acts that occurred before October 1, 1999 are not part of the continuing violation under Plaintiffs' pattern-or-practice theory and therefore are time-barred. *Id.* We also held that "any acts that occurred after October 1, 1999 that comprise part of an alleged pattern or practice of FHA violations are actionable." *Id.*

In our reconsideration opinion, we indicated that parties who relocated prior to October 1, 1999 but who moved again after that date may have timely claims. *Id.* at 975 n.5. Specifically, we noted that because Plaintiff's amended complaint alleges that Ms. Sistrunk relocated after that date and continued to end up in segregated neighborhoods, she had a claim based on acts that are part of the continuum of the alleged pattern or practice that dates back to October 1, 1999. *Id.* We recognize that potential plaintiffs who initially relocated before October 1, 1999 are not included in the Relocation Rights Contract. (R. 42, Def.'s Resp. at 13.) The key question, however, is not simply whether potential plaintiffs are subject to the Relocation Rights Contract. Rather, the timeliness question hinges on whether potential plaintiffs who moved after October 1, 1999—regardless of when they initially relocated from public housing—suffered from discrimination based on the same policies that were at play under the Relocation Rights Contract.

Under our previous holdings, potential plaintiffs who suffered concrete harms after October 1, 1999 based on the same relocation policies at play under the Relocation Rights Contract may properly be included in the proposed class. Plaintiffs argue that former CHA

tenants who are not subject to the Relocation Rights Contract are subjected to the same relocation programs as provided to those who are subject to the Relocation Rights Contract. (R. 50, Pls.' Sur-Response at 5.) They cite independent reports in support of that charge. (R. 44, Pls.' Reply at 20.) While the pre-October 1, 1999 Plaintiffs do not have the same contractual claims as those who moved after that date, the allegations demonstrate that they share federal claims based on CHA's allegedly discriminatory actions after the implementation of the Relocation Rights Contract. As a result, we find that Plaintiffs' proposed class of CHA tenants who initially relocated prior to October 1, 1999 is not time-barred.[4]

## II. Definiteness: Tenants Who Initially Relocated Prior to October 1, 1999

An implicit prerequisite to class certification is that a sufficiently definite class must exist. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977-78 (7th Cir. 1977). A sufficiently definite class exists "if its members can be ascertained by reference to objective criteria." *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987). The scope of the prospective class may be defined, for example, by reference to the defendant's conduct. *Alliance to End Repression*, 565 F.2d at 978. "A class description is insufficient, however, if membership is contingent on the prospective member's state of mind." *Gomez*, 117 F.R.D. at 397; *see also Hispanics United*, 160 F.R.D at 686. The class definition must be sufficiently precise to make it "administratively feasible for the Court to determine whether a particular individual is a member of the proposed class." *Clay v. American Tobacco Co.*, 188 F.R.D. 483,

---

[4]We do not agree with CHA's assertion that Plaintiffs' proposed class includes all of the proposed class members who would have been included in the class as originally set forth in their amended complaint. (*See* R. 42, Def.'s Resp. at 9.) The class proposed in Plaintiffs' current motion excludes families who moved prior to October 1, 1999 but have made no subsequent attempt to move. (R. 44, Pls.' Reply at 4.)

490 (S.D. Ill. 1999).

CHA argues that the proposed class of plaintiffs who moved prior to October 1, 1999 but were injured by CHA's policies after that date fails for lack of definiteness because it turns on a subjective assessment of which voucher holders have been harmed. (R. 42, Def.'s Resp. at 13 n.6.) Plaintiffs' proposed class includes two separate groups of CHA residents who left public housing with Housing Choice Vouchers before October 1, 1999: first, those who "have subsequently moved on or after October 1, 1999 into segregated neighborhoods"; and second, those who "moved into segregated neighborhoods, *and* who have subsequently attempted to move on or after October 1, 1999, but who, due to the Defendants' policies and practices, failed to make another move." (R. 44, Pls.' Reply at 3-4.) Plaintiffs argue that this class (including both sub-groups) is sufficiently definite because it is based on CHA's conduct and because it is analogous to the class that this Court certified in *Hispanics United*.[5] (R. 44, Pls.' Reply at 10-11).

We agree with Plaintiffs that the group of "[f]ormer CHA residents who left public housing before October 1, 1999, with Housing Choice Vouchers, but who have subsequently moved on or after October 1, 1999 into segregated neighborhoods" is sufficiently definite. (*Id.* at 3.) Members of this group are easily identified by objective criteria: namely, the dates of their initial relocation from public housing, the dates of subsequent moves using Housing Choice Vouchers, and the demographics of the neighborhoods into which they moved. We need make

---

[5]The certified *Hispanics United* class consisted of "[a]ll individuals who have owned or rented dwellings in the Village of Addison on or subsequent to January 1, 1994 and who have been, will be and/or continue to be, adversely affected by the *segregative and discriminatory* actions, policies, and practices of the Defendants and their agents as alleged in the Plaintiffs' Amended Complaint." 160 F.R.D. at 686 n.5 (emphasis in original).

no subjective inquiry into potential class members' state of mind to determine whether individuals meet these criteria. As a result, this sub-group of the pre-October 1, 1999 class is sufficiently definite to proceed to Rule 23 analysis. *See, e.g., Gomez*, 117 F.R.D. at 397.

The second sub-group of the pre-October 1, 1999 class—which consists of those who "have subsequently attempted to move on or after October 1, 1999, but who, due to the Defendants' policies and practices, failed to make another move," (R. 44, Pls.' Reply at 4)—does not meet the definiteness prerequisite to class certification. Whether or not a potential plaintiff has "attempted to move" may, in some cases, be ascertainable based on objective criteria, but we could not determine whether those individuals failed to make a move "due to" CHA's policies and practices without embarking on an inherently subjective assessment of the potential plaintiffs' states of mind. For this reason, we find that this proposed sub-group has more in common with the proposed class in *Simer v. Rios*, 661 F.2d 655 (7th Cir. 1981), than the class certified in *Hispanics United*. In *Simer*, the Seventh Circuit affirmed the district court's decision not to certify a class composed of:

> [A]ll low income persons otherwise eligible for participation in the 1979 CIP who were denied 1979 CIP assistance by the federal defendants or discouraged from applying for assistance because they were not delinquent in the payment of their fuel bills for 1979.

*Id.* at 664, 667. In affirming the district court's decision, the Seventh Circuit focused on the difficulty in identifying class members whose membership hinges on their individual state of mind (in that case, the reasons why people did not apply for a specific form of assistance). *Id.* at 669. The Seventh Circuit found that to certify the proposed class would have required the court to take on the "Sisyphean task" of identifying those individuals who were discouraged from

9

seeking assistance because of the at-issue program's notice requirement. *Id.* The Court held that the serious administrative difficulties in gathering facts to identify potential class members' states of mind regarding their failure to act rendered certification of the proposed class inappropriate. *Id.* at 669-70.

As in *Simer*, the sub-group of plaintiffs who failed to move after October 1, 1999 "due to" CHA's policies is insufficiently definite to allow class certification. Certification of this group would require us to delve into each potential plaintiff's decision-making processes to determine why they failed to move after that date. It would be impractical for this Court to gather facts as to each potential class member's reasons for failing to move after attempting to do so. To determine whether each individual or family is properly within the class would require evidence showing that the CHA's policies, rather than any number of other subjective or external factors—for example: proximity of friends and neighbors, health issues, transportation needs, individual comfort levels, resistance to change—were the underlying reason for that person's immobility over the last several years. Because of the inherent subjectivity involved in trying to identify the members of this class, we find that the sub-class of individuals who initially relocated prior to October 1, 1999 but have not moved since that date "due to" CHA's policies or practices fails to meet the definiteness requirement, and therefore is ineligible for certification.

**III. Rule 23 Requirements**

Having found that a class consisting of those who initially relocated from public housing prior to October 1, 1999 but did not move after that date is insufficiently definite, we now turn to whether certification of the following class is appropriate:

10

All present and former public housing residents who have moved or will move out of CHA public housing using a Housing Choice Voucher (also known as a Section 8 Certificate or a Section 8 Voucher) and who moved or will move into segregated neighborhoods using a Housing Choice Voucher after October 1, 1999, and have been, continue to be, or will be adversely affected by Defendants' and their agents' segregative and discriminatory actions, policies, and practices, as alleged in Plaintiffs' first amended complaint.[6]

To be clear, this class consists of the following three sub-groups: (1) those who initially relocated from public housing prior to October 1, 1999 and moved into segregated neighborhoods after October 1, 1999; (2) those who initially relocated from public housing after October 1, 1999; and (3) those who will relocate from public housing using a Housing Choice Voucher in the future, but have not yet done so.[7]

## A. Numerosity

As noted above, Rule 23(a) requires that a proposed class be so numerous that joinder is impractical. "Where the class is large, the numbers alone are dispositive of the impracticability of joinder," and the Court need not consider other factors to determine whether the numerosity requirement is met. *Thillens, Inc. v. Community Currency Exchange Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983). The class as proposed by Plaintiffs consists of 3,265 families who have moved out of CHA housing using Housing Choice Vouchers from January 1, 1995 through August 31, 2002. Plaintiffs assert that there are at least 2,019 families who relocated from public housing after October 1, 1999 and 3,981 families who may move with vouchers in the future. (R. 37, Pls.' Mot. At 8.) Even assuming that the class total will be reduced significantly by our

---

[6]As noted above, the Court can certify a class that is different than the proposed class where the proposed class is deficient. *Buycks-Roberson*, 162 F.R.D. at 328-29.

[7]The sub-class of plaintiffs who will relocate in the future is limited in this definition (and in the Plaintiffs' proposed definition) to those who currently reside in public housing.

exclusion of pre-October 1, 1999 relocatees who have not moved since that date, it is obvious that joinder of this number of claims is entirely impractical, if not impossible. *See Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339, 343 (N.D. Ill. 1978) (noting that class exceeding 1,000 is plainly sufficient). The modified class thus easily meets Rule 23(a)'s numerosity requirement.

### B.    Commonality

Rule 23(a) also requires a showing of questions of law or fact common to the class. To satisfy this requirement, Plaintiffs must demonstrate that there is at least one common question of law or of fact. *Nat'l Org. for Women*, 172 F.R.D. at 360. Factual variation among class members' grievances will not defeat class certification. *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). Instead, it is sufficient for Plaintiffs to demonstrate that the claims arise from a common nucleus of operative fact. *Id.* "Where broad discriminatory policies and practices constitute the gravamen of a class suit, common questions of law or fact are necessarily presented." *Hispanics United*, 160 F.R.D. at 688 (citation omitted).

Plaintiffs assert that there are at least four common questions of law or fact that are shared by all of the class members. The common questions are as follows: (1) whether CHA operated a program of building closure, demolition, and forced relocation that has perpetuated segregation in the Chicago metropolitan area in violation of the FHA; (2) whether CHA operated a program of building closure, demolition, and forced relocation that has had an adverse impact on African-Americans, women, and families with children in violation of the FHA; (3) whether CHA failed to affirmatively further fair housing in violation of the FHA, Executive Orders 11063 and 12892, and the Quality Housing and Work Responsibility Act of 1998; and (4) whether CHA discriminated against Plaintiffs on the basis of race in violation of the FHA and Title VI of the

Civil Rights Act of 1964 by steering them to racially segregated neighborhoods.[8] (R. 37, Pls.'

Mot. at 5.) These four common questions are more than sufficient to show that the proposed

class members' experiences arise from a common nucleus of operative fact. *Rosario*, 963 F.2d at

1017-18.

Plaintiffs have demonstrated that their suit is based upon broad discriminatory policies

that are common to the class as a whole. *Hispanics United*, 160 F.R.D. at 681. The core

question in this case is whether CHA's policies and practices have intentionally or effectively

caused former CHA tenants to relocate to segregated neighborhoods. The facts that will

determine that question constitute a common nucleus of operative fact. *Id.* As a result, we find

that the modified class meets the commonality requirement of Rule 23(a)(2).

## C.    Typicality

To satisfy Rule 23(a)(3), the named plaintiffs' claims must be typical of the claims of the

proposed class. A named plaintiff's claims can be considered typical of the proposed class if

they arise out of the "same event or practice or course of conduct that gives rise to the claims of

other class members and . . . her claims are based on the same legal theory." *De La Fuente v.*

*Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The typicality requirement does not

---

[8]Plaintiffs assert that there are an additional four questions common to the sub-class of people who have moved out of public housing after October 1, 1999: (1) whether CHA breached ¶ 6(a) of the Relocation Rights Contract by failing to make available meaningful mobility counseling to Plaintiffs; (2) whether CHA breached ¶ 5(b) of the Relocation Rights Contract by failing, prior to relocating covered leaseholders, to make a good faith effort to negotiate with Local Advisory Councils of CHA residents a Memorandum of Agreement reflecting property-specific understandings with respect to the relocation process; (3) whether CHA breached ¶ 11(a) of the Relocation Rights Contract by failing to issue any quarterly reports; and (4) whether CHA breached ¶ 4(a) of Relocation Rights Contract by failing to provide comparable replacement housing. (R. 37, Pls.' Mot. at 8-9.)

mean that all plaintiffs must present the same factual circumstances. *Nat'l Org. for Women*, 172 F.R.D. at 361. Instead, "similarity of legal theory may control even in the face of differences of fact." *Hispanics United*, 160 F.R.D. at 689. Nor does Rule 23 typicality require a showing that all plaintiffs suffer the same injury. *Id.*

### 1. Tenants Who Initially Relocated Prior to October 1, 1999 and Moved After That Date: Ms. Sistrunk and Ms. Wallace

Ms. Sistrunk and Ms. Wallace are named plaintiffs who would represent the class of former CHA tenants who relocated from public housing prior to October 1, 1999 and who moved after that date into a segregated neighborhood using a Housing Choice Voucher.[9] (*See* R. 44, Pls.' Reply at 6 n.2.) Both Ms. Sistrunk and Ms. Wallace allege that after their initial relocation from public housing, after October 1, 1999 they were directed by CHA programs and affiliates into segregated, high-poverty neighborhoods. (*Id.*; *see also* R. 14, Am. Compl. ¶¶ 127-38; 164-75.) As with the class as a whole, the claims of both Ms. Sistrunk and Ms. Wallace arise from the legal theory that CHA has a policy and practice of steering relocation in a way that perpetuates segregation. Their claims thus "have the same essential characteristics as the claims of the class" as a whole, which is sufficient to meet the Rule 23(a)(3) typicality requirement. *Hispanics United*, 160 F.R.D. at 689 (citation omitted).

### 2. Tenants Who Relocated After October 1, 1999: Ms. Maples

Ms. Maples is the named Plaintiff who upon certification would represent the sub-class of former CHA tenants who relocated with Housing Choice Vouchers after October 1, 1999. (R. 37, Pls.' Mot. at 9.) CHA argues that certification of this sub-class should be denied because Ms.

---

[9] We do not have enough information at this time to determine whether any of the other named plaintiffs also fall into this group.

14

Maples is not typical of the class she seeks to represent. In support of this argument, CHA picks apart Ms. Maples' deposition testimony to demonstrate that Ms. Maples was not forced out of public housing, (R. 42, Def.'s Resp. at 14), that she moved to a neighborhood with "a relatively low poverty rate," (*Id.* at 15), that she is "satisfied with her housing and is adjusting well," (*Id.*), and that she "has no unmet social service needs that pose barriers to housing," (*Id.* at 16). In response, Plaintiffs make similar use of Ms. Maples' deposition testimony to demonstrate that when Ms. Maples' housing unit was slated for destruction, CHA actively steered her into an overwhelmingly African-American neighborhood on the south side of Chicago even though she had expressed her desire to move to an integrated neighborhood on the city's north side. (R. 44, Pls.' Reply at 13-14.)

While the Seventh Circuit has made clear that we may "make whatever factual and legal inquiries are necessary" to decide whether certification is appropriate, *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001), we are in no position at this stage to determine which characterization of Ms. Maples' testimony is more credible. What we can determine, however, both from the facts alleged in the Complaint and the testimony highlighted by the parties, is that Ms. Maples' claims "have the same essential characteristics as the claims of the class at large." *De La Fuente*, 713 F.2d 225. The claims of the plaintiffs in the proposed class arise from CHA's alleged policy of forcing them to move from public housing and segregating them into "overwhelmingly African-American neighborhoods." (R. 14, Am. Compl. ¶ 1.) Plaintiffs have sufficiently demonstrated that Ms. Maples' claims are based on the same factual premise. (*Id.* ¶¶ 139-50; R. 44, Pls.' Reply at 13-18.) More importantly, the legal theory underlying Ms. Maples' claims is that CHA's forcible relocation of Ms. Maples from public

15

housing to a segregated neighborhood violated federal fair housing laws. This is the same legal

theory underlying the claims of the proposed class. Accordingly, we find that Ms. Maples'

claims meet the Rule 23(a) typicality requirement.[10]

### 3. Plaintiffs Who Will Relocate from Public Housing in the Future: Ms. Smith

Ms. Smith is the named plaintiff who would represent the sub-class of families who will

relocate from public housing with Housing Choice Vouchers in the future. (R. 44, Pls.' Reply at

22.) Ms. Smith plans to relocate from public housing using a voucher in the near future, and she

expects to suffer imminent injury based on CHA's allegedly discriminatory policies as set forth

in the amended complaint. (*Id.* at 22-24; R. 43, CHA App. 4 at 69, 73-78.) Her claims thus meet

the Rule 23 typicality requirement because they arise from the same legal theories as the claims

of the prospective class members, who also will be leaving public housing with vouchers in the

future.

### D. Adequacy of Representation

To satisfy the adequacy requirement under Rule 23(a)(4), Plaintiffs must demonstrate that

the representative party will fairly and adequately protect the interests of the class, that the

interests of the class representative coincides with the interests of the rest of the class, and that

the class representative and her attorney is prepared to vigorously prosecute the action. *Ridings*

*v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas) Ltd.*, 94 F.R.D. 147, 154 (N.D.

---

[10]CHA points out, and Plaintiffs concede, that Ms. Maples has no minor children living with her and therefore cannot represent the familial status disparate impact claims. (R. 42, Def.'s Resp. at 20; R. 44, Pls.' Reply at 18 n.9.) This does not prevent Ms. Maples from representing the sub-class of post-October 1, 1999 relocatees because "similarity of legal theory may control even in the face of differences of fact."*Hispanics United*, 160 F.R.D. at 689 (citation omitted).

Ill. 1982). The adequacy threshold is a low one: "[a]s long as the Court is assured that the named parties are qualified and capable of fully pursuing the common goals of the class without collusion or conflicts of interest" the requirement is met. *Id.* (citation omitted). We have no doubt that Plaintiffs' counsel, who have significant experience in federal housing and civil rights litigation, will vigorously prosecute this action.[11] As a result, we must simply consider whether the named plaintiffs are adequate representatives of their respective sub-classes.

### 1. Tenants Who Initially Relocated Prior to October 1, 1999 and Moved After That Date: Ms. Sistrunk and Ms. Wallace

Ms. Sistrunk and Ms. Wallace both meet the adequacy requirement of Rule 23(a)(4). As discussed above, Ms. Sistrunk and Ms. Wallace both claim that CHA's policies and practices caused them to relocate to segregated housing even though they desired to use their vouchers to move to integrated neighborhoods. By proving their claims, Ms. Sistrunk and Ms. Wallace will be furthering the interests of the class as a whole, who have claims based on similar facts and equivalent legal theories. Their interest in declaratory and injunctive relief to access non-discriminatory relocation services thus coincides with and adequately represents the interests of the sub-class they seek to represent.

### 2. Tenants Who Relocated After October 1, 1999: Ms. Maples

CHA first argues that Ms. Maples is an inadequate class representative because her claims are not typical of the proposed class. Under the Rule 23(a)(4) adequacy test, Plaintiffs must demonstrate that Ms. Maples will fairly and adequately represent the class interests and that her interests are aligned with the rest of the class. The typicality analysis under Rule 23(a)(3)

---

[11]Plaintiffs' opening brief includes a list of class action lawsuits concerning public housing in Chicago that Plaintiffs' counsel have litigated. (R. 37, Pls.' Mot. at 7.)

closely coincides with the determination of whether a named plaintiff will fairly and adequately protect the class interests. *Ridings*, 94 F.R.D. at 154. As addressed above, the Complaint and Ms. Maples' deposition testimony demonstrate that her claims are typical of the class as a whole. Her interest in declaratory and injunctive relief requiring CHA to develop programs to assist Plaintiffs in moving to integrated neighborhoods and in fulfilling their obligations under the Relocation Rights Contract is strongly aligned with the interests of all potential plaintiffs who moved from public housing after October 1, 1999 with a Housing Choice Voucher.

CHA also argues that Ms. Maples is not an adequate class representative because her claim is weak and she has no interest in this suit's outcome. (R. 42, Def.'s Resp. at 19.) CHA asserts that Ms. Maples was recruited by Plaintiffs' lawyers to participate in this suit for the benefit of other people, rather than to redress any injury that she suffered herself. We greet this assertion with a certain amount of skepticism because allowing CHA to assist in the determination of whether the representative parties will fairly and adequately protect the interests of the class "is a bit like permitting a fox, although with pious countenance, to take charge of the chicken house." *Ridings*, 94 F.R.D. at 154 (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981). Plaintiffs have shown that Ms. Maples is not satisfied with the relocation services she was given and that she "continues to want to live in a racially integrated neighborhood and enjoy the benefits of interracial association." (R. 44, Pls.' Reply at 19 (citing CHA App. 3 at 287, 386-87).) We find that Plaintiffs have sufficiently demonstrated that Ms. Maples has an interest in the suit's outcome sufficient to rebut CHA's protestations that she is an inadequate representative for the proposed class.

18

### 3. Plaintiffs Who Will Relocate from Public Housing in the Future: Ms. Smith

CHA argues that Ms. Smith is not an adequate representative for the sub-class of future relocatees because she has no stake in the outcome of the suit and her claim is speculative. (R. 42, Def.'s Resp. at 22.) In support of this argument, CHA asserts that Ms. Smith has not sought to move with a Housing Choice Voucher, and therefore is not even a member of the class that she seeks to represent. (*Id.* at 22-23.) Ms. Smith testified, however, that a CHA facilitator told her that she would not be able to return to public housing if she chose to move with a temporary voucher. (*Id.*, CHA App. 4 at 73-78.) Plaintiffs assert that under the Relocation Rights Contract, Ms. Smith has the right to change her housing choice at any time before she makes a permanent move and plans to amend her housing choice to move with a voucher. (*Id.* at 23 n.11.) As a result, we find that Ms. Smith is in fact a member of the class she purports to represent.

We also find that Ms. Smith's interests are sufficiently aligned with the proposed class to allow certification, and that upon certification, she will fairly and adequately represent those who will relocate from CHA housing using Housing Choice Vouchers in the future. Ms. Smith expects to move from public housing in the near future. (R. 43, CHA App. 4 at 69.) While she testified that she has no objection to living in a "[b]lack safe area," that does not bear on her affirmative desire to live in an integrated area. (*Id.*, CHA App. 4 at 94.) She expects to move using a Housing Choice Voucher and she has notified CHA of that choice. (R. 44, Pls.' Reply at 23 n.11.) These facts suffice to demonstrate that Ms. Smith shares the proposed sub-class's interest in injunctive relief from CHA's alleged policy and practice of providing inadequate relocation services to individuals and families leaving public housing with a Housing Choice

Voucher.

**E.     Rule 23(b)(2)**

Plaintiffs assert that their proposed class meets the requirements of Rule 23(b)(2) as well as Rule 23(a).  (R. 37, Pls.' Mot. at 7.)  Rule 23(b)(2) allows a class action to proceed where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Thus, "the primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief is the primary or exclusive remedy sought. *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 477 (N.D. Ill. 1992).  The main sources of relief sought by Plaintiffs in this suit are declaratory and injunctive relief.  (R. 14, Am. Compl. at 49-50.)  Plaintiffs' pattern-or-practice allegations demonstrate Plaintiffs' theory that CHA has acted on grounds generally applicable to plaintiffs who relocated into segregated neighborhoods after October 1, 1999 and will continue to apply that pattern or practice to current public housing residents who will relocate in the future.  We conclude that this class falls within the ambit of Rule 23(b)(2), and is appropriate for certification.

## CONCLUSION

We grant Plaintiffs' motion for class certification in part and deny it in part. (R. 37-1.)

For the reasons set forth herein, we certify the following class:

> All present and former public housing residents who have moved or will move out of CHA public housing using a Housing Choice Voucher (also known as a Section 8 Certificate or a Section 8 Voucher) and who moved or will move into segregated neighborhoods using a Housing Choice Voucher after October 1, 1999, and have been, continue to be, or will be adversely affected by Defendants' and their agents' segregative and discriminatory actions, policies, and practices, as alleged in Plaintiffs' first amended complaint.

This case is set for status on October 27, 2004 at 10 a.m. The parties are again strongly urged to exhaust all remaining settlement possibilities before that date.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: October 6, 2004**

21